UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MARK LYNN RAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-CV-00074-SPM |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Martin J. O'Malley, Commissioner of Social Security (the "Commissioner"), denying the application of Plaintiff Mark Lynn Ray ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 8). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

---

[1] Martin J. O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted, therefore, for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.  **BACKGROUND**

In August 2017, Plaintiff applied for DIB, alleging that he had been unable to work since January 14, 2017. (Tr. 329-30). Plaintiff reported he was unable to work due to arthritis/joint disease of the shoulder, knee, elbow, and hips; lumbar spine/scoliosis/back pain; hypertension; hyperlipidemia; carpal tunnel; ischemic heart disease; chronic sinusitis; hearing problem and often ringing in the ears; high blood pressure; and right foot arthritis. (Tr. 369).  His application was denied. (Tr. 169-74). On January 22, 2018, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 175). On October 27, 2020, and March 11, 2021, Plaintiff appeared at hearings before the ALJ. (Tr. 38-45, 46-87). On March 30, 2021, the ALJ issued an unfavorable decision, finding that Plaintiff was not under a disability as defined in the Act. (Tr. 145-62). On October 1, 2021, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case to the ALJ for further proceedings. (Tr. 163-66). Pursuant to the remand order, another hearing was held on April 14, 2022. (Tr. 88-132). On June 29, 2022, the ALJ entered a partially favorable decision, finding Plaintiff was not disabled prior to April 26, 2022, but became disabled on that date. (Tr. 10-37). Plaintiff again requested review by the Appeals Council, but the but the Appeals Council declined to review the case on March 30, 2023. (Tr. 1-7). Plaintiff has exhausted all administrative remedies, and the June 29, 2022 decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

With respect to Plaintiff's medical and vocational records, the Court accepts the facts as set forth in Plaintiff's statement of facts and Defendant's response. The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

## II.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *Accord, e.g., Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d

3

at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of

4

other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

### III.  THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ issued a partially favorable decision on Plaintiff's claim. (Tr. 10-28). The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 14, 2017; that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine with mild radiculopathy at C7, left shoulder impingement syndrome/mild tendinopathy and degenerative joint disease of the acromioclavicular joint, degenerative disc disease of the lumbar spine, and mild bilateral carpal tunnel syndrome; and that that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 16-19). The ALJ found that prior to April 26, 2022, Plaintiff had the following RFC:

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he was unable to climb ladders, ropes, or scaffolds and could occasionally climb ramps and stairs. He was limited to occasional stooping, crouching, and crawling. He could engage in frequent reaching in all directions, except that he was limited to occasional overhead reaching, pushing, or pulling bilaterally. The claimant could perform frequent handling and fingering and he could have no concentrated exposure to extreme heat, cold, dust, fumes, or other pulmonary irritants.

(Tr. 19). At Step Four, the ALJ found that since January 14, 2017, Plaintiff had been unable to perform any past relevant work. (Tr. 26). At Step Five, relying on the testimony of a vocational expert, the ALJ found that prior to April 26, 2022, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, with representative occupations being hand packer and production worker. (Tr. 27). The ALJ further found that beginning on April 26, 2022, there were no jobs that existed in significant numbers that Plaintiff

5

could perform. (Tr. 28). Accordingly, the ALJ found that Plaintiff was not disabled prior to April 26, 2022, but became disabled on that date and continued to be disabled through the date of the decision. (Tr. 27-28).

### IV. STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two

6

inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## V. DISCUSSION

Plaintiff makes four challenges to the Commissioner's decision: (1) that the ALJ erred in using April 26, 2022, as the disability onset date because the disability onset date should have been November 2020 at the latest (which was when a cane was prescribed for Plaintiff's gait abnormality); (2) that the medical evidence shows that he could not perform light work, which means that he should have been found disabled as of his 50th birthday (in October 2017) under the applicable medical-vocational guidelines; (3) that the ALJ should have found Plaintiff was disabled as of September 2019, when an MRI from the VA showed significant problems with his back; and (4) that the ALJ erred in not finding Plaintiff's headaches to be a severe impairment and not including limitations related to those headaches in the RFC assessment.

Plaintiff's first three arguments are all directed toward the question of whether the ALJ's RFC assessment for the period from October 2017 to April 2022—that Plaintiff could perform light work with some postural and environmental limitations but with no need for the use of a cane—is supported by substantial evidence. An ALJ determines the RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (quotation marks omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation marks omitted). "Well-settled precedent confirms that the ALJ bears a responsibility to develop the

7

record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), and *Landess v. Weinberger*, 490 F.2d 1187, 1188 (8th Cir. 1974)). "An ALJ is required to obtain additional medical evidence if the existing medical evidence is not a sufficient basis for a decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).

The Court first considers Plaintiff's argument that the ALJ erred in determining that Plaintiff's RFC did not include limitations related to his use of a cane until April 2022. "An ALJ must consider limitations resulting from a claimant's use of a cane only if the cane is 'medically necessary' or 'medically required.'" *Boyd v. O'Malley*, No. 4:23-CV-00142-AGF, 2024 WL 706217, at *4 (E.D. Mo. Feb. 21, 2024) (quoting *Lea v. Kijakazi,* No. 21-03094-CV-S-WBG, 2022 WL 3684596, at *2 (W.D. Mo. Aug. 25, 2022)); *see also Shunkwiler v. Saul*, No. 1:20-CV-00145-JAR, 2021 WL 1516417, at *5 (E.D. Mo. Apr. 16, 2021) ("The full range of light work may be precluded when a constant use of a cane is medically necessary.") (citation omitted). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." S.S.R. 96-9p, 1996 WL 374185, at *7 (July 2, 1996). "As the Courts of this District have recognized, the Eighth Circuit Court of Appeals has not addressed what specific documentation a claimant must provide to establish the limitations of a medically required hand-held assistive device." *Tanya S. v. O'Malley*, No. 23-CV-1416, 2024 WL 3858155, at *6 (D. Minn. Aug. 19, 2024) (quotation marks omitted). District courts within the Eighth Circuit "have cited favorabl[y] to the Third, Seventh, and Tenth Circuits which have required an unambiguous opinion from a physician stating the circumstance

8

in which the assistive device is medically necessary." *Id.* (citing *Mya Y. v. Saul*, No. 20-CV-1296 (JRT/LIB), 2021 WL 3023691, at *5 (D. Minn. June 28, 2021), *report and recommendation adopted,* No. CV 20-1296 (JRT/LIB), 2021 WL 3022723 (D. Minn. July 16, 2021)). "A prescription (or lack thereof) for an assistive device is not necessarily dispositive of the presence or absence of medical necessity when determining the RFC." *Lea*, 2022 WL 3684596, at *2 (citing *Staples v. Astrue*, 329 F. App'x 189, 191 (10th Cir. 2009)).

After review of the record, the Court finds the ALJ's decision not to include the need to use a cane in the RFC until April 26, 2022, is supported by substantial evidence. Although Plaintiff's doctor prescribed a cane in November 2020 for Plaintiff's gait abnormality (Tr. 1048), neither the prescription nor the treatment notes state the circumstances in which the cane was medically necessary. The first statement from a physician showing the circumstances in which the cane was medically necessary was dated April 26, 2022, when Dr. William Dement completed a form indicating that the use of a cane was medically necessary for Plaintiff; that it was needed to assist in walking, standing, balance, and arising from a sitting position; and that it should be used on level terrain, uneven terrain, to descend stairs or ramps, to ascend stairs or ramps, most of the time he is walking, and most of the time he is standing. (Tr. 1343). The ALJ reasonably considered that Dr. Dement's opinion did not indicate that the cane was medically necessary prior to April 26, 2022. (Tr. 22-23). The ALJ also reasonably considered that there was a "dearth of evidence reflecting [Plaintiff's] actual use of the cane," noting that only one of Plaintiff's medical records dated between the November 2020 prescription and the April 2022 opinion mention that Plaintiff was using a cane at his visits. (Tr. 22-23).[2]

---

[2] Notes from a May 25, 2021 visit state, "Patient came to this encounter ambulating independently with a straight cane for assistance. Unsteady gait noted." (Tr. 1286). The same language appears in the notes from several subsequent visits to the same provider during the relevant period. (Tr.

The Court acknowledges the existence of contrary evidence that tends to support Plaintiff's position, including Plaintiff's own testimony about his cane use and treatment notes indicating that Plaintiff had an abnormal gait and/or a limp during the relevant time frame. However, the ALJ's decision indicates that she thoroughly considered and weighed this evidence, and the Court cannot disturb the ALJ's decision merely because the Court might have weighed the evidence differently.

Although substantial evidence supports the ALJ's decision not to include the need to use a cane in the RFC prior to April 26, 2022, the Court must also consider whether substantial evidence supports the ALJ's finding that Plaintiff could perform the standing and walking requirements of light work prior to April 26, 2022. Plaintiff points out that light work requires the ability to stand and/or walk for six hours in an eight-hour workday. *See* S.S.R. 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). He argues that for at least a significant portion of this period, beginning at the latest in November 2020, the medical evidence and testimony show that he was suffering from lower back, hip, and knee pain and gait problems that would have prevented him from performing the standing and walking requirements of light work. Plaintiff also points out that if the ALJ had given him a sedentary RFC, he would have been deemed disabled under the medical-vocational guidelines (the "grids") as of the October 5, 2017, the date he turned 50. *See* 20 C.F.R. p. 404, subpt. P, app'x 2, Rule 201.14.

After review of the record, it is unclear to the Court how the ALJ reached the conclusion that Plaintiff was capable of performing the standing and walking requirements of light work prior to April 26, 2022. If, as the ALJ found, Dr. Dement's April 26, 2022, opinion that Plaintiff required

---

1236, 1248, 1267, 1335). However, after reviewing the language in context, the ALJ found that these repeated notations were "carried over" from the previous visits. (Tr. 22). Having reviewed the records, the Court finds the ALJ's finding reasonable and supported by the record.

10

a cane for most standing and walking applied only as of that date going forward, the only opinion evidence addressing Plaintiff's physical ability to function between January 2017 and April 2022 was the December 2017 opinion of the non-examining state agency consultant that Plaintiff could generally perform light work. (Tr. 138-40). As discussed below, that opinion predated much of the relevant evidence related to Plaintiff's lower back pain and hip pain and all of the evidence related to Plaintiff's gait problems and use of a cane. As to the vast majority of the relevant period, the record does not appear to contain any medical opinion evidence relevant to Plaintiff's physical ability to function in the workplace.

The Court recognizes that the absence of relevant medical opinion evidence does not necessarily require remand. In some cases, mild or unremarkable objective medical findings and other medical evidence may constitute sufficient medical support for an RFC finding, even in the absence of any medical opinion evidence directly addressing the Plaintiff's ability to function in the workplace. *See, e.g.,, Stringer v. Berryhill*, 700 F. App'x 566, 567-68 (8th Cir. 2017) (affirming a finding that the claimant was not disabled; noting, "While there were no medical opinions, it appears the medical evidence would have supported even a less restrictive RFC"); *Hensley v. Colvin,* 829 F.3d 926, 929-34 (8th Cir. 2016) (upholding the ALJ's finding that the plaintiff could perform sedentary work despite the absence of specific medical opinion evidence; finding "adequate medical evidence of [the plaintiff's] ability to function in the workplace" where the plaintiff's treating physician found that the plaintiff was in no acute distress and had a normal knee exam and gait; another physician found that his knee assessment was normal and he had "full knee range, good lower limb and spinal flexibility"; and the plaintiff reported greatly reduced or nonexistent knee and back pain after treatment); *Steed v. Astrue*, 524 F.3d 872, 875-76 (8th Cir. 2008) (upholding the ALJ's finding that the plaintiff could perform light work based on largely

11

mild or normal objective findings regarding her back condition, despite the fact that the medical evidence was "'silent' with regard to work-related restrictions such as the length of time she [could] sit, stand and walk and the amount of weight she can carry"). Here, however, the record does not contain generally mild or unremarkable objective findings or other medical evidence that tends to support the RFC; instead, the bulk of the treatment notes and objective findings appear to support Plaintiff's testimony that he had significant lower back pain and gait abnormalities that affected his ability to stand and walk, worsening in the later years of the relevant period.

A September 2019 MRI showed a bulging disc at L5-S1, degenerative disc disease involving the L5-S1 disc, and early degenerative changes. (Tr. 691). Notes from late 2019 through the middle of 2020 show that Plaintiff complained of lower back pain that was only partially helped by narcotic medication, had restricted range of motion in the lumbar spine, had positive facet loading tests in the lumbar spine, and had positive tenderness to palpation over the lumbar paraspinal area. (Tr. 745-50, 751-57, 901-07). At a September 2020 physical therapy appointment for lumbar pain and hip pain aggravated by standing and walking, a physical therapist noted multiple abnormalities in Plaintiff's gait, scores of 2 to 3 out of 5 on several muscle strength tests, reduced range of motion in the lumbar spine, and findings of spasms and tenderness in several areas. (Tr. 879-80). In October 2020, Plaintiff reported that five sessions of physical therapy had increased his lower back pain, not improved it. (Tr. 893). In November 2020, Plaintiff's doctor diagnosed him with a gait abnormality and prescribed a cane. (Tr. 1048). In notes dated from November 2020 to April 2022, Plaintiff consistently reported severe lower back pain (at a level of 8/10 to 10/10); Plaintiff was consistently prescribed narcotic medication that Plaintiff reported only partially reduced his pain (and that Plaintiff reported he could not always take because it made him drowsy or sedated); Plaintiff was given lumbar epidural steroid injections that provided only

12

very temporary relief; Plaintiff's providers frequently noted that he walked with a "slight limp"; Plaintiff's providers consistently noted positive facet loading tests of the lumbar spine and positive tenderness to palpation over the lumbar spine area; and Plaintiff's diagnoses consistently included lumbar radiculopathy, lumbar or lumbosacral interverbal disc degeneration, and gait abnormality. (Tr. 1032-46, 1047-48, 1268-78, 1235-45, 1246-62, 1285-1303, 1304-15, 1326-32). By April 26, 2022, medical opinion evidence indicated that Plaintiff required the use of a cane under nearly all circumstances. (Tr. 25, 1343).

The Commissioner suggests that the RFC finding is supported by the ALJ's discussion of some unremarkable objective findings in a 2017 consultative examination; a September 2019 MRI that noted "early" degenerative changes; some negative straight leg raise test findings that appeared in notes from 2019 and early 2020 (alongside other, positive, findings related to Plaintiff's lumbar spine); and observations of normal gait prior to November 2020. However, neither the ALJ nor the Commissioner explains how these findings provide support for the finding that Plaintiff could perform the standing and walking required of light work through April of 2022—particularly in light of the many other abnormal imaging results and abnormal objective physical examination findings in the record in throughout 2020, 2021, and 2022. The Eighth Circuit has cautioned that "[t]he ALJ may not simply draw his own inferences about plaintiff's functional ability from medical reports." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation marks omitted). The Commissioner also points out that the ALJ considered the absence of surgical interventions. Although a conservative course of treatment is relevant to an assessment of a plaintiff's subjective complaints, the fact that Plaintiff's providers only prescribed narcotic pain medication, physical therapy, lumbar steroid injections, and a cane does not constitute

13

substantial evidence that Plaintiff can stand and/or walk for six hours (without a cane) in an eight-hour day.

In light of the findings discussed above, and in the absence of any medical opinion evidence addressing Plaintiff's physical ability to function after 2017, the Court does not find substantial evidence to support the ALJ's conclusion that Plaintiff could perform the standing and walking requirements of light work through April 25, 2022. The Court finds the Eighth Circuit's decision in *Noerper v. Saul*, 964 F.3d 738 (8th Cir. 2020), instructive. In that case, the claimant testified to significant knee pain, inability to walk or stand for very long, and a need to use a cane at home. *Id.* at 742. The record contained a mix of mild objective findings and more significant objective findings, with more significant objective findings dated later in the relevant period. *Id.* at 741-43. The record also contained an opinion from a consulting physician that the claimant could stand or walk for six hours in an eight-hour workday, but that opinion predated much of the evidence related to the claimant's knee pain. *Id.* at 743, 747. The ALJ found the claimant could perform light work and found her not disabled. *Id.* at 744. The Eighth Circuit rejected some of the claimant's specific challenges to the ALJ's decision, including the claimant's argument that the ALJ's had erred in analyzing Plaintiff's need for a cane. *Id.* at 745-46. However, the Eighth Circuit ultimately reversed the ALJ's decision, stating:

> At the end of the day, although most of the record can properly be characterized as mixed—which normally would require that we affirm under the substantial evidence standard—we agree with Noerper that the record is fatally lacking in one respect. There is simply no reliable evidence providing a basis for the specific conclusion that Noerper can stand or walk for 6 hours in an 8-hour workday. In reaching this result, we do not suggest that an ALJ must in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality. Something, however, is needed. *See Combs*, 878 F.3d at 646 ("The ALJ 'may not simply draw his own inferences about plaintiff's functional ability from medical reports.'" (quoting *Strongson*, 361 F.3d at 1070)). Here, the closest the record comes to supporting the 6-hour determination is the report of consulting physician

14

>Dr. Jung. That report, however, predated the majority of the treatment records concerning Noerper's knee conditions. We conclude that the absence of evidence to suggest the accuracy or propriety of the 6-hour limitation demonstrates that the ALJ did not fulfill the duty to fully develop the record.

*Id.* at 746-47. The Court found that on the record before it, it was "unable to determine the permissibility of the Commissioner's RFC determination. *Id.* (citing *Brown v. Colvin*, 825 F.3d 936, 940 (8th Cir. 2016)). It therefore remanded the case for further proceedings.

Here, as in *Noerper*, although the ALJ explained why she found Plaintiff did not require the use of a cane, it is unclear how the ALJ determined that Plaintiff was capable of performing the standing and walking requirements of light work. As in *Noerper*, there is a good deal of objective evidence and other medical evidence that appears to support Plaintiff's claim that his impairments make him unable to stand and/or walk for extended periods. As in *Noerper,* the principal evidence that supports the ALJ's conclusion that Plaintiff can perform light work predates most of the relevant medical evidence. In addition, it appears that like the ALJ in *Noerper,* the ALJ in this case may have been improperly drawing her own inferences from medical reports. For example, in finding that lumbar spine imaging did not show degeneration typically associated with reliance on an assistive device, the ALJ noted that "a September 2019 X-ray evidenced merely probable early degenerative changes, but maintained disc spaces, and a concurrent MRI showed a bulging disc at L5-S1 and multilevel degenerative disc disease described as early degenerative change." (Tr. 22). It is not apparent to the Court how, or whether, such findings translate into an ability to stand and/or walk six hours a day, with or without a cane. As in *Noerper*, the Court finds "no reliable evidence providing a basis for the specific conclusion that [the plaintiff] can stand or walk for 6 hours in an 8-hour workday." *Id.* at 746.

For all of the above reasons, the Court finds that the record does not contain medical evidence addressing Plaintiff's physical ability to function in the workplace with respect to

15

walking and standing, and thus the Court cannot determine whether the ALJ's finding that Plaintiff could perform the standing and walking requirements of light work is supported by substantial evidence. The Court will therefore remand this case to the ALJ for further proceedings. On remand, the ALJ may need to further develop the record by contacting Plaintiff's treating physicians or obtaining the services of a medical consultant regarding Plaintiff's functional abilities prior to April 26, 2022.

Finally, the Court considers Plaintiff's argument that the ALJ erred in not finding Plaintiff's headaches to be a severe impairment and in not including limitations related to those headaches in the RFC assessment. As Plaintiff points out, Plaintiff testified that he has daily tension headaches and has migraines twice a month, and the medical records indicate that he was diagnosed with migraines and cervicogenic headache and was prescribed medications for both conditions. Although the ALJ briefly mentioned the headaches at times in her summary of the record, the ALJ did not address whether Plaintiff's headaches constituted a severe impairment and did not discuss whether (or how) they would impact Plaintiff's RFC. It is not clear to the Court whether the ALJ considered the impact (if any) Plaintiff's headaches would have on his RFC. When the ALJ reconsiders Plaintiff's RFC on remand, the ALJ should consider whether Plaintiff's headaches require any additional restrictions in the RFC.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under

16

Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of September, 2024.